**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

FILED

03 JUN 11 AM 8:35

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| CLARENDON NATIONAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. CV-00-S-1421-S |
| MCCLARTY CONSTRUCTION AND EQUIPMENT COMPANY, INC.; CHARLES HILL; JUNE DOWNS; TIM JENKINS; and RON MAPLES, | ) ) ) ) ) | |
| Defendants. | ) | |

ENTERED

JUN 11 2003

**MEMORANDUM OPINION**

Defendant McClarty Construction and Equipment Company, Inc. ("McClarty") mined coal in three Alabama counties ( Blount, Jefferson, and Tuscaloosa) from 1980 to 1993.[1] Plaintiff, Clarendon National Insurance Company ("Clarendon"), is a New York corporation engaged in the business of issuing reclamation bonds to coal mine operators, to ensure that land subjected to mining, typically "strip mining," operations is returned to a condition approximating its "natural state" when the supply of coal has been exhausted.[2]

McClarty was required by the Alabama Surface Mining Commission to purchase and maintain reclamation bonds for property it was mining.[3] Between 1980 and 1991, McClarty purchased reclamation bonds from American Resources, an insurance company unrelated to Clarendon.[4] According to defendants, American Resources required McClarty to "guarantee

---

[1] *See* Defendants' Evidentiary Submission in Opposition to Plaintiff's Motion for Summary Judgment (doc. no. 17), Exhibits A, B, C, and D, ¶¶ 2,10 at 1, 4-5.

[2] Complaint (doc. no. 1) ¶ 1.

[3] *See id.* at 2-3.

[4] *See* Defendants' Evidentiary Submission in Opposition to Plaintiff's Motion for Summary Judgment (doc. no. 17), Exhibits A (T. Jenkins Affidavit), B (Downs Affidavit), C (Maples Affidavit), and D (Hill Affidavit) ¶ 3.

31

payments for any costs associated with a default on the reclamation bonds. . . . [and] that *each individual director or officer and their spouse (if applicable) also guarantee payment for any costs associated with a default on the subject bonds.*"[5] These individual directors and officers included: McClarty President Charles Hill; Vice-President Ron Maples; Secretary/Treasurer June Downs; and, director and shareholder Tim Jenkins.[6]

In 1990, however, McClarty began to search for a different bonding company. Defendants claim that they were looking for a company that would permit McClarty to purchase reclamation bonds that did not require personal guarantees or indemnity agreements from individual directors and their spouses.[7] Specifically, defendants assert that an agent from SMIS Incorporated ("SMIS") who had placed McClarty's bonds with American Resources contacted McClarty's Board of Directors about renewing a substantial number of reclamation bonds that were about to expire. According to defendants, the individual directors advised the SMIS agent that McClarty was looking for reclamation bonds that could be issued without any personal guarantee and/or indemnity from the individual directors and/or their spouses, if applicable, and that,

> the agent for SMIS informed McClarty and the individual directors that Clarendon National Insurance Company and/or Van American Insurance Company, the service agent of Clarendon and the issuer and underwriter of the reclamation bonds in questions [sic] . . . could provide bonds without the need for a personal guarantee and/or indemnity.[8]

On the basis of this alleged representation, McClarty entered into a general contract of

---

[5] *Id.* (emphasis supplied) ¶ 4.

[6] *See id.*

[7] *See id.* ¶¶ 5,6.

[8] *See* Defendants' Brief in Opposition (doc. no. 18) at 3-4.

indemnity, guaranty, and collateral trust agreement with Clarendon on September 3, 1991.[9]  The

signatories included defendants Charles Hill, June Downs, Tim Jenkins, and Ron Maples, each of

whom executed the agreements.[10]  The key issue in contention is whether these defendants executed

the agreements in their individual, as well as corporate, capacities.

In response to plaintiff's motion for summary judgment, the court ordered the parties to

submit additional evidentiary materials and briefs addressing the following issues: (1) the identity

and role of the previously unnamed SMIS employee who purportedly arranged the purchase of

reclamation bonds by defendants from plaintiff and the relationship between SMIS, Van American,

and Clarendon; (2) whether there existed an agency relationship between SMIS and Clarendon

(and/or Van American), such that any alleged fraudulent misrepresentations by the unnamed SMIS

employee would bind the plaintiff; and (3) whether the October 1993 letters were admissible in light

of Federal Rule of Evidence 801(c) and (d)(2).[11]

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 permits any party to a civil action to move for summary

judgment upon a claim, cross-claim, or counterclaim on which there is no genuine issue of material

fact, and upon which the moving party is entitled to prevail as a matter of law.

> The judgment sought *shall be rendered forthwith if* the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits, if any,
> show that there is no genuine issue as to any material fact and that the moving party
> is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c) (emphasis supplied).  Thus, "the plain language of Rule 56(c) mandates the

---

[9] *See* Motion for Summary Judgment (doc. no. 11), Exhibits A (General Contract of Indemnity), B (Guaranty), and D (Collateral Trust Agreement).

[10] *Id.*

[11] *See* Order (doc. no. 26).

3

entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See, e.g., Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The movant discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the opposing party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

When the moving party has discharged its burden, the opposing party must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery*, 64 F.3d at 594. The non-moving party must come forward with more than a "mere 'scintilla'" of evidence; instead, "there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

When deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-moving party, and, to resolve all reasonable doubts in that party's favor. *See Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-moving party are not unqualified, however. "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692

4

F.2d 1321, 1324 (11th Cir. 1983). Moreover, inferences that are "merely colorable,"[12] conclusory,[13] or conjectural, do not create a genuine issue of material fact. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corporation v. Dunmar Corporation*, 43 F.3d 587, 592 (11th Cir.), *cert. denied*, 516 U.S. 817, 116 S. Ct. 74, 133 L.Ed.2d 33 (1995) (citation omitted). In short, to avoid summary judgment, the opposing party must come forward with specific facts that are "material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicious." *American Lease Plans, Inc. v. Silver Sand Co. of Leesburg, Inc.*, 637 F.2d 311, 315 (5th Cir. 1981).[14]

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510).

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City*

---

[12] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988).

[13] *See Johnson v. Fleet Finance, Inc.*, 4 F.3d 946, 949 (11th Cir. 1993); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989).

[14] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

*of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (internal marks and citations omitted)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

With the foregoing standards in mind, the following facts either are not disputed or are stated in a light most favorable to defendants.

## II. STATEMENT OF FACTS

SMIS, located in Birmingham, Alabama, was an independent, full-line, general-casualty insurance-brokerage firm.[15] In addition to placing casualty insurance on behalf of its customers, SMIS also placed surety bonds.[16] SMIS had relationships with several insurance companies, including Van American Insurance Company ("Van American").[17] In approximately July of 1997, SMIS was sold and subsequently merged with Van American; it no longer exists as a separate entity.[18]

In approximately March of 1990, James Godfrey, Jr. was involved in establishing Van American, and he served as President of the company from 1990 until approximately 1999.[19] Van American was engaged in the business of providing reclamation bonds for both surface and deep coal mining operations.[20] Van American acted on behalf of Clarendon regarding the issuance of

---

[15] Defendant's Supplemental Evidentiary Submission (doc. No. 28), Exhibit 2 (Godfrey, Jr. Affidavit) ¶ 6.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.* ¶ 2.

[20] *Id.*

reclamation bonds and surety bonds for surface coal mine operators to regulatory agencies, including agencies such as the Alabama Surface Mining Commission ("ASMC").[21]

Prior to the formation of Van American (*i.e.*, from the late 1970s until 1990), Mr. Godfrey was the sole owner, president, and an employee of SMIS.[22]  When Mr. Godfrey became president of Van American in 1990, he severed his employment relationship with SMIS, but remained sole owner of that company.[23]  His father, James Godfrey, Sr., and Donna Stanley were employed by SMIS at all times relevant to this action.

McClarty was in the business of surface mining coal deposits until 1993, when it ceased operations.[24]  John Jenkins, who is not a party to this action, was employed by McClarty from 1980 until 1993.[25]  Mr. Jenkins served as General Manager of McClarty for thirteen years.[26]  Part of his duties as General Manager was to secure reclamation bonds required by the State of Alabama.[27]

American Resources Company, Inc. ("American Resources") was the carrier that issued McClarty's first surety bonds for mining reclamation.[28]  American Resources required the officers of McLarty and their spouses to guarantee payment on the reclamation bonds in their individual capacities in the event of default by the corporate entity.[29]

Approximately two or three months before McClarty switched its reclamation surety bonds

---

[21] *Id.*

[22] *Id.* ¶ 5.

[23] *Id.*

[24] Defendant's Supplemental Evidentiary Submission (doc. No. 28), Exhibit 1(J. Jenkins Affidavit) ¶ 2.

[25] *Id.* ¶ 1.

[26] *Id.* ¶ 2.

[27] *Id.*

[28] *Id.* ¶ 3.

[29] Defendants' Evidentiary Submission  in Opposition to Plaintiff's Motion for Summary Judgment (doc. no. 17), Exhibits A (T. Jenkins Affidavit), B (Downs Affidavit), C (Maples Affidavit), and D (Hill Affidavit) ¶ 4.

to Van American and Clarendon in 1991, James Godfrey, Sr.,[30] an employee of SMIS, began discussions with Mr. Jenkins in an effort to convince McClarty to switch its bonds from American Resources to another company.[31] Mr. Jenkins and Mr. Godfrey, Sr. discussed whether Mr. Godfrey, Sr. could obtain bonds from Van American and Clarendon that would not require any personal indemnification or guarantees.[32] Mr. Jenkins attests that he had numerous conversations with Mr. Godfrey, Sr. about switching McClarty's surety bonds to Van American and Clarendon, based on the senior Godfrey's representations that no personal guarantees would be required.[33] Mr. Jenkins communicated these representations to McClarty's officers, who decided to purchase the bonds from Van American and Clarendon based on the second-hand representations of Mr. Godfrey, Sr.[34] It is uncontroverted, however, that neither SMIS nor its officers, agents, servants, or employees ever had the authority to bind Van American or Clarendon National Insurance Company.[35]

Under the terms of the general indemnity contract, guaranty, and collateral trust agreement executed by McClarty's officers and directors on September 3, 1991, Clarendon agreed — through its underwriter and service agent Van American — to issue reclamation bonds on property to be mined by or on behalf of McClarty in the State of Alabama.[36] At no time did James Godfrey, Jr., ever tell Mr. John Jenkins or anyone at McClarty that personal indemnification or personal

---

[30] Prior to filing supplemental briefs and evidentiary submissions in response to the court's August 7, 2002, order, James Godfrey, Sr. was referred to by defendants as an unnamed "agent of SMIS, who represented Van American/Clarendon." *See, e.g.,* Defendants' Brief in Opposition (doc. no. 18) at 16.

[31] Defendant's Supplemental Evidentiary Submission (doc. No. 28), Exhibit 1(J. Jenkins Affidavit) ¶ 8.

[32] *Id.* ¶ 9.

[33] *Id.* ¶ 10.

[34] *Id.*

[35] Defendant's Supplemental Evidentiary Submission (doc. no. 28), Exhibit 2 (Godfrey, Jr. Affidavit) ¶ 7.

[36] *See* Complaint at 4.

guarantees were necessary for the issuance of surety bonds.[37] The day upon which the Van American and Clarendon documents were executed, James Godfrey, Sr., Donna Stanley, and James Godfrey, Jr., came to Mr. Jenkins's house to obtain signatures.[38] During this meeting, there were no discussions about the execution of personal indemnification agreements or guarantees.[39]

The amount of the bonds issued totaled approximately $1,390,524, for which McClarty issued collateral to Clarendon in the amount of $134,346.30.[40] In exchange, Clarendon issued the McClarty bonds between September 5, 1991 and June 23, 1992, in an amount totaling $977,650.[41]

Clarendon granted a power of attorney to Van American, empowering the company to act on Clarendon's behalf in all respects when issuing reclamation surety bonds within the United States, and designating James Godfrey, Jr., and Phillip S. McCrorie as Controller (President and Controller of Van American, respectively), to act on behalf of Clarendon.[42]

McClarty was actively engaged in mining operations in Jefferson County, Alabama, during 1991. Sometime during that year, however, McClarty received a letter from the United States Office of Surface Mining demanding payment in the amount of $30,000 for delinquent taxes owed by a mining company for which McClarty had been a contractor in 1982.[43] McClarty contested the tax assessment. As a result, the "Office of Surface Mining instructed the Alabama Surface Mining Commission to cease granting McClarty any mining permits, causing McClarty to cease its mining

---

[37] Defendant's Supplemental Evidentiary Submission (doc. no. 28), Exhibit 1 (J. Jenkins Affidavit) ¶ 11.

[38] Id. ¶ 12.

[39] Id.

[40] See Affidavit of Rick Thomas (doc. no. 13) at 3, ¶¶ 7, 8.

[41] See id. at 3, ¶ 7.

[42] Defendant's Supplemental Evidentiary Submission (doc. no. 28), Exhibit 2 (Godfrey, Jr. Affidavit) ¶ 4 , Exhibit A (Power of Attorney).

[43] See Defendants' Evidentiary Submissions (doc. no. 17), Exhibit A (Hill Affidavit), at 4.

operations."[44]   According to plaintiff, the Alabama Surface Mining Commission "revoked McClarty's mining license and ordered its bonds forfeited."[45]  As of the date this complaint was filed, May 26, 2000, the State of Alabama had not released those bonds.  According to plaintiff, "McClarty ceased its mining operations leaving undone substantial reclamation work on the permit areas which were bonded by Clarendon. . . . In addition, McClarty ceased making premium payments on the bonds leaving unpaid premiums due on the Bonds."[46]

In October of 1993, approximately *two years after* the parties executed the general indemnity contract, the guaranty, and the collateral trust agreement that collectively form the basis for this action, an assistant underwriter at Van American named Tina H. Cocanougher wrote a letter to SMIS Assistant Vice-President, Donna Stanley, regarding the McClarty bond agreement.[47]  In effect, Cocanougher opined that McClarty and its directors needed to execute new contract documents to govern the McClarty bond issuances, because the original documents had been incorrectly executed.[48]  According to Cocanougher, Van American did

> not have personal indemnity of anyone[;] everyone signed on behalf of the Corporation.  Personal indemnity was contingent upon approval and therefore is something we must obtain immediately.  If something were to happen with McClarty, all we would have would be the guaranty of the company.  I realize that this should have been recognized and pointed out at the time they were initially prepared, however since they were not we need to try and get them now.[49]

Ms. Stanley wrote a letter to defendant June Downs on October 19, 1993, forwarding the

---

[44] *See* Defendants' Brief in Opposition, Exhibit B (Downs Affidavit), at 5.

[45] Complaint ¶ 16.

[46] Plaintiff's Brief in Support (doc. no. 16), at 4.

[47] *See* Defendants' Evidentiary Submission in Opposition (doc. no . 17), Exhibit B (Downs Affidavit) at Ex. A (October 15, 1993 letter).

[48] *See id.*

[49] *See id.*

Cocanougher letter and documents to be executed by the defendants.  Defendants were not fools, and chose not to execute the new documents.[50]

Plaintiff alleges that defendants breached the general indemnity contract by "ceasing to make premium payments and by failing to perform McClarty's reclamation obligations."[51]  Plaintiff also seeks indemnification from McClarty Construction, Charles Hill, June Downs, Tim Jenkins, and Ron Maples for the reclamation work it has undertaken in Alabama "pursuant to its obligations as Surety . . . ."[52]  Plaintiff has moved for summary judgment, and seeks compensation for:  outstanding premiums allegedly due on the bonds, totaling $132,647.38; the expenses incurred by plaintiff pursuant to defendants' default, totaling $108,833.88; and, $862,885 to fully collateralize the remaining bonds.  The total amount claimed by plaintiff is $1,104,366.20.[53]  Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes that plaintiff's motion is due to be granted.

### III. DISCUSSION

#### A.    Ambiguity of the Contract

Plaintiff is a New York corporation, defendant McClarty is an Alabama corporation, and the individual defendants are residents of Alabama.  Thus, there is complete diversity of citizenship, and, the requisite jurisdictional amount is in controversy.  *See* 28 U.S.C. § 1332(a)(1).  The contracts that form the basis of this action contain choice-of-law provisions indicating that Alabama law supplies the substantive rules of decision.  As there is no dispute among the parties on this point, the court

---

[50] *See id.*, Exhibits A (T. Jenkins Affidavit), B (Downs Affidavit), C (Maples Affidavit), and D (Hill Affidavit), ¶ 9.

[51] *See* Complaint ¶ 15.

[52] Complaint ¶ 16.

[53] Plaintiff's Brief in Support (doc. no. 16), at 5.

shall apply Alabama law.

Plaintiff claims that the language of the September 1991 general indemnity contract is unambiguous, and that defendants agreed to be liable in both their corporate and individual capacities for "all premiums for the bonds jointly and severally as they became due; to indemnify and exonerate Clarendon from any and against any loss or expense of whatever kind; and to reimburse Clarendon for all sums paid on account of any such loss promptly."[54] Defendants respond that "the General Contract of Indemnity. . . is ambiguous both on its face and [as] construed by the parties."[55]

However, "[t]he mere fact that adverse parties contend for different constructions [of a contract] does not of itself force the conclusion that the disputed language is ambiguous." *Antram v. Stuvyesant Life Insurance Co.*, 287 So. 2d 837, 840 (Ala. 1973). Instead, whether the language in the parties' 1991 general indemnity contract is ambiguous is a question of law for resolution by the trial court. *See Liggans R.V. Center v. John Deere Insurance Co.*, 575 So. 2d 567, 569 (Ala. 1991) (relying on lower court's citation of *Upton v. Mississippi Valley Title Co.*, 469 So. 2d 548, 553 (Ala. 1985)).

In order to determine whether the language of the contract is ambiguous, the trial court must "construe the words according to the 'interpretation ordinary men would place on the language used therein.'" *See Liggans*, 575 So. 2d at 569 (quoting *Quick v. State Farm Mutual Insurance Co.*, 429 So. 2d 1030, 1033 (Ala. 1983)). Moreover, the "provision in question is not construed in isolation, but [the contract] must be construed as a whole, looking to the language within its four corners." *Liggans*, 575 So.2d at 569 (citations and internal brackets omitted). A contract term is ambiguous

---

[54] *Id.* at 2-3.

[55] Defendants' Brief in Opposition (doc. no. 18), at 12.

if the meaning of that term is "reasonably susceptible to more than one meaning." *Sang v. Jefferson*

*County Board of Education*, 652 So. 2d 310, 312 (Ala. Civ. App. 1994) (citing *Martin v. Ross*, 608

So. 2d 399 (Ala. Civ. App. 1992)).

To begin with, the general indemnity contract at issue here reads, in relevant part, as follows:

We, the undersigned, *hereinafter referred to as "Principals,"* hereby request Clarendon National Insurance Company[,] hereinafter referred to as "Surety," to furnish instruments of suretyship, hereinafter referred to as "Bonds," and as an inducement therefor to [sic] make the following representations of fact, promises and agreements.

**PROMISES AND AGREEMENTS**

In consideration of the furnishing of any such Bond by Surety and for other valuable considerations, the sufficiency of which is hereby acknowledged, the Principal(s) hereby jointly and severally promise and agree as follows:

1.    To pay all premiums for each such Bond, as they fall due, and until Surety has been provided with competent legal evidence that the Bond has been released and discharged.

2.    To indemnify and exonerate Surety from and against any and all loss and expense of whatever kind, including but not limited to, interest, court costs and counsel fees, hereinafter referred to as "Loss," as and when incurred, which it may incur or sustain as a result of or in connection with (1) the furnishing of and/or default on any Bond; and (2) the enforcement of this Agreement.

. . .

3.    To further indemnify, exonerate and protect Surety from loss and to permit Surety to obtain a release of Bonds issued for Principal, in the event of a default as defined in (c) below, and in addition to all other rights and remedies, including those provided for this Agreement, the Collateral Trust Agreement and Guaranty . . . .[56]

The individual defendants each signed the contract twice, next to handwritten "X"s: first,

on a line beneath which was typewritten in parentheses each individual's corporate title with

---

[56] Motion to Dismiss, Ex. A (General Indemnity Contract) (emphasis supplied).

McClarty; and second, on a line beneath which was typewritten the word "Individual" in parentheses.

Specifically, the signature pages to the contract read as follows:

> <u>McClarty Construction and Equipment Company, Inc.</u>
> (Corporate Name)
> <u>By: X  /s/ Charles Hill</u>
> (Signature)
> <u>Charles Hill — President</u>
> (Print or Type Name and Title)
>
> <u>**X**  /s/ Charles Hill</u>
> (*Individual*)
> <u>Charles Hill </u>
> (Print or Type Name)
>
> <u>McClarty Construction and Equipment Company, Inc.</u>
> (Corporate Name)
> <u>By: **X**  /s/ Ron Maples</u>
> (Signature)
> <u>Ron Maples — Vice-President</u>
> (Print or Type Name and Title)
>
> <u>**X**  /s/ Ron Maples</u>
> (*Individual*)
> <u>Ron Maples  </u>
> (Print or Type Name)
>
> <u>McClarty Construction and Equipment Company, Inc.</u>
> (Corporate Name)
> <u>By: **X**  /s/ June Downs</u>
> (Signature)
> <u>June Downs — Sec./Treasurer</u>
> (Print or Type Name and Title)
>
> <u>**X**  /s/ June Downs</u>
> (*Individual*)
> <u>June Downs</u>
> (Print or Type Name)
> <u>McClarty Construction and Equipment Company, Inc.</u>
> (Corporate Name)
> <u>By: **X**  /s/ Tim Jenkins</u>
> (Signature)

Tim Jenkins — Dir./Stockholder
(Print or Type Name and Title)

**X**  /s/ Tim Jenkins
(*Individual*)
Tim Jenkins
(Print or Type Name)[57]

Despite the fact that each defendant signed the contract twice — first in their corporate capacities, and again as individuals — they claim that the contract does not make them individually liable. Defendants assert instead that the contract is ambiguous because, despite the dual capacity signatures, there is no reference within the body of the contract to the personal liability of McClarty's individual officers and directors.[58] Defendants point to *Marriott International, Inc. v. DeCelle*, 722 So. 2d 760 (Ala. 1998), for the proposition that the absence of any reference either to personal or corporate liability within the body of the general indemnity contract is inconsistent with the contract's signature page and, thus, renders the contract ambiguous. Defendants' reliance on *DeCelle* is misplaced.

In *DeCelle*, the Alabama Supreme Court stated that, when "determining whether a contract is ambiguous as to the capacity in which a party signed it, this Court looks to the consistency between the body of the contract and the signature block." *DeCelle*, 722 So. 2d at 762. The first page of the guaranty agreement at issue in *DeCelle* read: "The undersigned, *an individual* . . . ." *Id.* at 761 (emphasis in original). DeCelle signed the signature block as follows, however: "SIGNED Gregory T. DeCelle /s/ Gregory T. DeCelle as *Pres. Sum Big Stores, Inc.*" *Id.* (emphasis supplied). The Alabama Supreme Court determined that the body of the contract and the signature block were inconsistent, because DeCelle *signed* the contract as a *corporate representative*, although the

---

[57] Motion for Summary Judgment, Ex. A (General indemnity contract) (emphasis added).

[58] Defendant's Brief in Opposition (doc. no. 18), at 13.

contract was *addressed* to DeCelle as an *individual*. *See id.* at 762. Taken as a whole, then, the contract was deemed ambiguous, warranting the consideration of parol evidence to determine the intent of the contracting parties. *Id.*

While defendants correctly observe that there is no discussion of individual or corporate liability within the body of the general indemnity contract at issue here, that fact does not make the body of the contract inconsistent with the signature block. The contract is addressed to the "Principals" (plural) — of whom this court determines there are five: the corporate entity, McClarty Construction and Equipment Co., Inc., and the four individual defendants, Hill, Downs, Jenkins, and Maples. Each of these principals signed the contract in their corporate and personal capacities.

Further, in construing the term "individual" according to the interpretation of "ordinary men," *Liggans R.V. Center*, 575 So. 2d at 569, this court cannot discern (and defendants have not offered) another plausible meaning for the term "individual" as used in the signature block of the McClarty general indemnity contract, other than to signify the fact that defendants executed the contract in their individual capacities, as well as in their representative capacities as corporate officers and directors. *See Sang*, 652 So. 2d at 312 ("An ambiguity exists when a contract term is reasonably more susceptible to more than one meaning."). *Black's Law Dictionary* defines the term "individual" to "denote *a single person as distinguished from a group or class*, and also, very commonly, *a private or natural person as distinguished from a* partnership, *corporation*, or association." *Black's Law Dictionary* 773 (6th ed. 1990) (emphasis supplied). Given this definition, the court concludes that defendants' signatures, each on a line beneath which is written the word "individual," can only mean that defendants each signed the contract as single, private persons "as distinguished from a . . . corporation." *Id.* Moreover, defendants — all of whom were experienced

16

corporate officers — would have no reason to interpret the signature line marked "individual" in any other fashion. *See Wurzburg Brothers, Inc. v. Coleman*, 404 So. 2d 334, 336 (Ala. 1981) (noting that defendant who was a shareholder and board member of corporation was "an experienced businessman who should know the proper method of signing a contract for his corporation"). Accordingly, the court concludes that the language of the general indemnity contract is unambiguous, thus rendering each individual defendant personally liable to plaintiff. Given that it is undisputed that McClarty has ceased its premium payments to plaintiff, and has defaulted on its reclamation obligations, the individual defendants thus will be personally liable to plaintiff for the reclamation costs, premium payments, other costs associated with the performance of McClarty's obligations under the bond contract at issue in this case.

**B.     Fraud in the Inducement**

Defendants alternatively assert that plaintiff fraudulently induced defendants to execute the contract, thus warranting its rescission.[59]  Defendants base their fraud claim on allegations that "an agent for SMIS represented [to defendants] that Van American/Clarendon could provide bonds without a personal guarantee.  Based on those representations, the individual board members agreed to switch bond companies to Van American/Clarendon."[60] Defendants add that, "contemporaneously with the signing of the General Contract of Indemnity and other relevant documents, *the agent for SMIS* continued to make representations that the individual board members would not be personally liable. . . .  [B]ecause of the clear misrepresentations of *the SMIS agent*, personal responsibility[,] if it indeed exists, was solely the product of the agent's fraud."[61]

---

[59] *See* Defendant's Brief in Opposition (doc. no. 18), at 16.

[60] *Id.* at 17.

[61] *Id.* (emphasis supplied).

Defendants explain that they previously had instructed "*an agent from SMIS Incorporated*" that they "were looking for reclamation bonds that could be issued without any personal guarantee and/or indemnity from the individual directors or their spouses."[62]  Defendants contend that "*the agent for SMIS* informed McClarty and the individual directors that Clarendon National Insurance Company and/or Van American Insurance Company, the service agent of Clarendon and the issuer and underwriter of the reclamation bonds in questions [sic] . . . could provide bonds without the need for a personal guarantee and/or indemnity."[63]  In response to the court's August 7, 2002 order, the defendants revealed the identity of the SMIS agent and alleged representative of Clarendon as James Godfrey, Sr., an employee of SMIS.[64]

In order to succeed on their claim of fraud in the inducement, defendants must demonstrate through substantial evidence that Clarendon or Van American[65] misrepresented a material fact concerning the subject matter of the underlying transaction, and that defendants reasonably relied on the misrepresentation to their detriment in executing a document or taking a course of action. *See, e.g., Oakwood Mobile Homes, Inc. v. Barger*, 773 So. 2d 454, 459, 461 (Ala. 2000) (citing *Reynolds v. Mitchell*, 529 So. 2d 227 (Ala. 1988) and *Foremost Insurance Co. v. Parham*, 693 So. 2d 409 (Ala. 1997)).  The Alabama Supreme Court replaced the previously followed "justifiable reliance" standard, which eliminated the general duty on the part of a person to read the documents received in connection with a particular transaction, with the "reasonable reliance" standard.  *See*

---

[62] *Id.* at 4.

[63] *Id.* (emphasis supplied).

[64] Failure to set forth significant probative evidence regarding the identity, authority, and knowledge of a purported agent could be fatal to defendants' position on summary judgment. *See, e.g., Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192,1198-99 (11th Cir. 1997).

[65] Plaintiff Clarendon does not dispute that Van American was acting as attorney-in-fact for Clarendon and, therefore, was the agent of Clarendon at the time of the transaction in question. *See* Clarendon's Supplemental Brief Filed Pursuant to the Court's Order of August 7, 2002 (doc. no. 29) at 3 n.1.

*Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1195 (Ala. 2001) (citing *Foremost*, 693 So. 2d at 417-21).  The court's review of a fraud claim under the reasonable reliance standard has been described as follows:

> "We carefully scrutinize the plaintiff's case in a fraud action 'because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests.'"

*Cornelius v. Austin*, 542 So. 2d 1220, 1222 (Ala. 1989) (quoting *Torres v. State Farm Fire & Casualty Co.*, 438 So. 2d 757, 758-59 (Ala. 1983)).  In reviewing defendants' fraud claim for substantial evidence, the court is mindful that defendants cannot abdicate their responsibilities to protect their interests, and reliance on any purported misrepresentation must be reasonable.

When considering a fraud claim based on Alabama law, the court may consider any evidence submitted in support of that claim.  This is because, "[u]nder Alabama law, an action alleging fraud in the inducement is an action in tort, and in such a case the parol evidence rule does not apply." *Dixon v. Southtrust Bank of Dothan, N.A.*, 574 So. 2d 706, 708 (Ala. 1990).  The Alabama Supreme Court has elaborated on this rule, explaining that

> the parol evidence rule applies to actions in contract and not in tort, and . . . parol evidence is admissible to show that a written agreement was procured by fraud.
>
> . . .
>
> "On the issues of whether a contract is void, voidable or reformable because of illegality, fraud, mistake or any other reason and whether the parties assented to a particular writing as the complete and accurate integration of their contract, *there is no parol evidence rule to be applied.  On these issues no relevant evidence, parol or otherwise, is excluded.  No written document is sufficient, standing alone, to determine any one of them, however long and detailed it might be.*  No one of the issues can be determined by mere inspection of the written document."

*Id.* at 708-09 (citations omitted) (emphasis added).

Despite the liberality of Alabama's evidentiary standard, defendants have failed to offer any substantial evidence that *plaintiff* fraudulently induced defendants to execute the General Contract of Indemnity. Defendants' fraud argument focuses on statements attributed to James Godfrey, Sr., an employee of SMIS, by John Jenkins, rather than statements made to defendants by plaintiff Clarendon or its designated agents at Van American, James Godfrey, Jr. or Phillip S. McCrorie.[66] As previously outlined, SMIS was an independent, full-line, general-casualty insurance-broker that had relationships with several insurance companies, including Van American.[67] SMIS was not sold to Van American until July of 1997, almost six years after the events forming the basis of this action.[68]

While it appears that James Godfrey, Sr. arranged for plaintiff to provide defendants with the reclamation bonds at issue in this case, defendants have failed to submit evidence that James Godfrey, Sr. was plaintiff's agent and, thus, was able to bind plaintiff, and render plaintiff liable to defendants for the alleged fraud.

Although the court afforded defendants and plaintiffs additional opportunity to supplement evidence and briefing on the agency issue in its August 7, 2002 order, defendants merely have submitted evidence to show Van American was an agent of Clarendon for the purpose of issuing reclamation bonds — a point that is not in contention.[69] What defendants have failed to do is submit evidence to show how any reliance on representations about the necessity of personal guarantees made by Mr. Godfrey, Sr., an employee of SMIS, was reasonable, as there is absolutely no evidence

---

[66] *See* Defendants' Brief in Opposition (doc. no. 18), at 3-4; Defendants' Supplemental Brief in Opposition (doc. no. 27), at 4-7.

[67] *See* Defendant's Supplemental Evidentiary Submission (doc. no. 28), Exhibit 2 (Godfrey, Jr. Affidavit) ¶ 6.

[68] *Id.*

[69] *See* Clarendon's Supplemental Brief Filed Pursuant to the Court's Order of August 7, 2002 (doc. no. 29) at 3 n.1.

that he was acting as an agent of either plaintiff or its undisputed agent, Van American, when the statements allegedly were made.

Even if the court were to assume an agency relationship existed between plaintiff and James Godfrey, Sr., defendants have not shown that he was acting within the line and scope of his employment when he made the alleged misrepresentations. *See Quick v. Peoples Bank of Cullman County*, 993 F.2d 793, 797 (11th Cir. 1993); *see also Firemen's Insurance Co. of Newark v. Pugh*, 686 So. 2d 281, 283 (Ala. Civ. App. 1996) (quoting decisions of the Alabama Supreme Court). Indeed, James Godfrey, Jr., President of Van American, an authorized agent for plaintiff Clarendon, states in his affidavit attached to *defendants'* supplemental evidentiary submission in opposition to summary judgment that he "never told John Jenkins or anyone else with McClarty, that the personal indemnification requirement would be waived."[70] Most importantly, Mr. Godfrey, Jr. states in his affidavit, and it is uncontroverted, that "no employee, agent, officer or servant of SMIS ever had the authority to waive Van American's and Clarendon's requirements of obtaining personal and individual indemnities from the principals of McClarty."[71]

The facts of this case are similar to those considered by the Alabama Supreme Court in *Hurst v. Nichols Research Corp.*, 621 So. 2d 964 (Ala. 1993). In *Hurst*, the plaintiff entered into employment negotiations with the defendant corporation. *Id.* at 964. Once those negotiations were complete, the defendant offered employment to the plaintiff, and documented the terms of the offer in a letter addressed to the plaintiff. *See id.* at 965. The letter detailed the number of stock options to which the plaintiff would be entitled during his employment. *See id.* The plaintiff later sued the

---

[70] Defendants' Supplemental Evidentiary Submission in Opposition (doc no. 28), Exhibit 2 (Godfrey, Jr. Affidavit) ¶ 12

[71] *Id.* ¶ 13.

defendant, claiming that he had been fraudulently induced to execute the employment contract by the defendant's promise during negotiations that he would receive a larger number of stock options than he ultimately did. *See id.* at 968. The Alabama Supreme Court, applying the more lenient justifiable reliance standard,[72] concluded that, even if it assumed that the plaintiff had been promised additional stock options, the "promissory fraud claim cannot be sustained without a showing of justifiable reliance," *id.*, and that plaintiff had failed to do so because he had been presented with a "clear and specific letter offering him employment with the corporation on certain terms . . . [t]hat . . . did not grant [the plaintiff] the absolute right to purchase additional shares." *Id.* at 969. The court concluded that, only by "closing his eyes to avoid discovering the truth" could the plaintiff have failed to see that the defendant corporation's alleged promise of additional stock options was "entirely different" than the terms set out in the letter that detailed his offer of employment. *Id.*

Defendants similarly could not have relied reasonably on the alleged, representations of Mr. Godfrey, Sr., a SMIS employee, which were conveyed to defendants by John Jenkins, to conclude that the individual corporate officers who signed the McClarty bond contract would not be personally liable under the contract to Clarendon. First, the language and signature block of the general indemnity contract at issue here are unambiguous.[73] Second, the purported representations of Mr. Godfrey, Sr. were distinctly different than what was reflected clearly in the unambiguous language of the general indemnity contract. Only by closing their eyes could the defendants have failed to realize that fact. Third, the President of Van America, Mr. Godfrey, Jr., never mentioned nor discussed, and accordingly did not misrepresent, any facts relating to defendants' personal liability

---

[72] As explained previously, Alabama now applies a more rigorous "reasonable reliance" standard when analyzing fraudulent misrepresentation claims. *See supra.* Part III.B.

[73] *See supra* Part III.A.

on the date the documents were executed.[74]

## C.    Mutual Mistake

Finally, defendants argue that, even in the absence of fraud, the general indemnity contract is void due to a mutual mistake of fact inherent in the contract's making.[75] According to defendants, this is because "the individual board members [of McClarty] understood and agreed to purchase the reclamation bonds solely on behalf of McClarty only. They did not ever agree to individually guarantee or otherwise indemnify Van American/Clarendon or any other entity for the costs associated with the reclamation bonds."[76] Consequently, defendants contend that, if the general indemnity contract is construed as implicating defendants in their personal capacities, the contract is the product of a mutual mistake, and must be rescinded.[77]

Plaintiff responds that defendants have failed to provide the court with substantial evidence of a mutual mistake in the contract's making, and instead contends that any mistake, if such there was, was unilateral. Plaintiff accordingly offers Alabama case law holding that the unilateral mistake of one party to a contract is not sufficient to warrant reformation of a disputed contract.[78]

Alabama Code § 8-1-2 provides the mechanism by which a contract can be reformed:

> When through fraud, a mutual mistake of the parties or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention, so far as it can be done without prejudice to the rights acquired by third person in good faith and for value.

Ala. Code § 8-1-2 (1975); *see also EBSCO Industries, Inc. v. Royal Insurance Company of America,*

---

[74] *See* Defendants' Supplemental Evidentiary Submission (doc. no. 28), Exhibit 1 (J. Jenkins Affidavit) ¶ 12.

[75] *See* Defendants' Brief in Opposition at 17-18.

[76] *Id.* at 18.

[77] *See id.* at 17.

[78] *See* Plaintiff's Reply Brief (doc. no. 22), Exhibit A., at 8.

775 So. 2d 128, 131 (Ala. 2000); *Greene v. Hanover Insurance Co.*, 700 So. 2d 1354, 1357 (Ala. 1997); *Scarber v. Kelsoe*, 594 So. 2d 68, 69 (Ala. 1992). The Alabama Supreme Court has adopted the *Restatement (Second) of Contracts* definition of "mutual mistake": *i.e.,* a "mutual misunderstanding concerning a basic assumption on which the contract was made." *Restatement (Second) of Contracts* § 152 (1981); *see also EBSCO Industries, Inc.*, 775 So. 2d at 131.

Although the "general rule of contract law provides that if a written contract exists, the rights of the parties are controlled by that contract and parol evidence is not admissible to contradict, vary, add to, or subtract from its terms," *DeCelle*, 722 So. 2d at 762, this court may look to parol evidence to "establish the fact . . . of a mistake and in what it consisted, and to show how the writing should be corrected in order to conform to the agreement or intention which the parties actually made or had." *Scarber*, 594 So. 2d at 69-70 (quoting *Alabama Farm Bureau Insurance Co. v. Hunt*, 519 So. 2d 480, 485 (Ala. 1987)). Arguing that a mutual mistake is inherent in the making of the general indemnity contract at issue herein, defendants urge this court to review parol evidence of their intent in entering that contract (which, they claim, was not to render themselves individually liable under the contract). Defendants point to their individual affidavits as evidence of their intent when they signed the indemnity agreements.

In order to succeed, however, defendants must present evidence of a *mutual* mistake of fact, not a unilateral misunderstanding. Defendants must produce evidence that is "clear, convincing, and satisfactory, which proves that the [instrument] does not truly express the intentions of the parties." *McDonald v. U.S. Die Casting & Development Co.*, 585 So. 2d 853, 855 (Ala. 1991) (citing *Clemons v. Mallett*, 445 So. 2d 276, 279 (Ala. 1984)). The *McDonald* court further stated:

If the averments are "doubtful and unsatisfactory, and the mistake is not made

24

entirely plain, equity will withhold relief upon the ground that the written paper ought to be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy."

*Id.* at 1391.

To meet their burden, defendants point to the October 15, 1993 letter written by Tina Cocanougher, an assistant underwriter for Van American, to Donna Stanley at SMIS, contending that Van American did not have personal indemnity from the individual defendants in the documents executed in 1991. Ms. Stanley then forwarded the letter and new proposed documents to the defendants who refused to execute the new documents.

Assuming that the letters were admissible and could be considered by the court,[79] they are not sufficient to create a fact dispute with regard to mutual mistake. The letters were written two years *after* the indemnity agreement was executed by persons who were not involved in the negotiation or execution of the agreements. What is more, the summary judgment record fails to reveal the scope of Ms. Cocanougher's employment and authority — an important issue upon which the court cannot speculate. *See, e.g., Autrey v. Blue Cross and Blue Shield of Alabama*, 481 So. 2d 345, 347 (A. 1985) (finding summary judgment on contract claim proper where person making representation was only a soliciting agent, with no authority to vary the terms of the insurance contract and thus bind Blue Cross). As such, the evidence is not "clear, convincing, and satisfactory," as required by Alabama law. The letter cannot serve to create a fact dispute as to the

---

[79] This is a tall assumption as defendants have failed to provide any evidence to indicate that Tina Cocanougher was acting in the scope of her employment in making a legal determination as to the sufficiency of the personal indemnity agreements. "It is necessary, in order to support admissibility, that the content of the declarant's statement concerned a matter within the scope of his agency." *Wilkinson v Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1565 (11th Cir. 1991). Based on the evidence submitted by defendants, the court can only speculate as to the extent and scope of Ms. Cocanougher's authority.

understanding of Clarendon when the indemnity agreement was executed.[80]

At best, then, defendants have offered evidence of their unilateral mistake in entering the contract. Under Alabama law, "a unilateral mistake cannot form the basis for reformation of a contract." *EBSCO Industries,* 775 So. 2d at 131 (citing *American & Foreign Insurance Co. v. Tee Jays Manufacturing Co.*, 699 So. 2d 1226, 1229 (Ala. 1997)).

**D.    Amount Owed as a Result of Enforcement of the General Contract of Indemnity.**

In support of its motion for summary judgment, plaintiff submitted evidence that defendants, jointly and severally, owe $1,104,366.20 under its obligations outlined in the general contract of indemnity. This amount includes $132,647.38 for outstanding premiums on the bonds, $108,833.88 for expenses incurred by plaintiff pursuant to defendants' default, and $862,885 to fully collateralize the remaining bonds.[81] Defendants' response to this claim for damages comprises one sentence: "Moreover, because McClarty and the individual board members dispute the extent of their obligations under the reclamation bonds, to the extent any exist, including premiums allegedly due, reclamation costs, bond releases, engineering costs, and legal cost, summary judgment should also be denied on this ground."[82] This is nothing more than a recantation of the defendants' answer to Clarendon's complaint.[83] Defendants' response is bereft of any refutation of the evidence attached

---

[80] Defendants cite *Crimson Industries, Inc. v. Kirkland*, 736 So. 2d 597 (Ala. 1999), *Young v. United States*, 327 F.2d 933 (5th Cir. 1964), and *Simpson Sales Co. v. British General Insurance Co.*, 40 So. 2d 409 (Ala. 1949), for the proposition that the parol evidence rule does not exclude extrinsic evidence of negotiations, statements and acts that take place after the written agreement was made. *See* Defendant's Supplemental Brief in Opposition (doc. no. 27), at 17. These cases are inapplicable as they each involve a subsequent agreement that was made after an original written agreement was executed. In the instant case, the evidence is clear that no agreements subsequent to the guaranty, indemnity, and collateral trust agreements, are at issue.

[81] *See* Clarendon's Brief in Support of its Motion for Summary Judgment (doc. no. 16), at 9 and referenced Affidavit of Rick Thomas (doc. no. 13).

[82] *See* Defendants' Brief in Opposition (doc. no. 18) at 19.

[83] *See* Answer and Counterclaim (doc. no. 6) at 4-5, 8-12.

to the affidavit of Rick Thomas, the current President of Van American Insurance Company.[84]   A conclusory statement in a responsive brief that defendants dispute the extent of their obligations with no evidence to create a fact dispute as to the amount owed under the general indemnity agreement is insufficient to defeat summary judgment.  *See, e.g., Blue Cross and Blue Shield of Alabama v. Weitz*, 913 F.2d 1544, 1551-52 (11th Cir. 1990) (finding that Rule 56(e) requires evidence to counter a summary judgment motion, and that vague allegations contained in an answer are insufficient to defeat summary judgment).  Accordingly, plaintiff is entitled to recover at least $1,104,366.20 from defendants, jointly and severally.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is due to be granted.  An order consistent with this memorandum opinion shall be issued contemporaneously herewith.

DONE this ___11th___ day of June, 2003.

United States District Judge

---

[84] *See* Affidavit of Rick Thomas and attached exhibits (doc. no. 13).

27